**Hazel TATE, Individually and as Administratrix of the Estate of Peggy Jean Minton, Deceased, Plaintiff,**

**v.**

**RENAULT, INC., Defendant.**

**Civ. No. 2088.**

United States District Court
E. D. Tennessee,
Northeastern Division.

Sept. 7, 1967.

M. Lacy West, and T. R. Bandy, Jr., Kingsport, Tenn., for plaintiff.

H. E. Wilson, Kingsport, Tenn., for defendant.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

This is a products liability action, based on the diverse citizenship of the parties, for damages for wrongful death, personal injuries and injury to property, purportedly resulting from a one-vehicle traffic accident which occurred within the jurisdiction of this Court while the plaintiff's decedent was operating an allegedly defective Renault automobile. Substituted service of process was undertaken on the defendant Renault, Inc. under T.C.A. § 48–923 et seq. By amendment to her complaint, the plaintiff seeks to assert jurisdiction in this Court under T.C.A. §§ 20–235 and 20–236, the so-called Tennessee "long arm" statutes.

The defendant appeared specially through its motion of May 1, 1967 to at-tack the service of process, the venue of this action and the jurisdiction of this Court, Rule 12(b) (2), (3) and (5), Federal Rules of Civil Procedure. The plaintiff has moved to strike the defendant's aforementioned motion. The Court has permitted the parties to file affidavits and counter-affidavits on the factual issues thus placed in issue. Hereinafter, Regie Nationale des Usines Renault is referred to as Regie; Renault, Inc. is referred to as Renault; Eastern Auto Distributors, Incorporated, is referred to as Eastern; and C. M. Taylor, doing business as Downtown-Rambler-Renault as a dealer in Kingsport, Tennessee in Renault automobiles, is referred to as the dealer.

The plaintiff purchased a 1966 Renault automobile from the dealer in Tennessee. The dealer purchased this vehicle from Eastern, a Virginia corporation, which is the regional distributor of Renault automobiles in Tennessee. Eastern purchased it from Renault, a New York corporation, which is the exclusive importer in the United States of Renault automobiles. Renault purchased the car from Regie, a French corporation, which manufactured the vehicle. Renault is the wholly-owned subsidiary of Regie. Renault owns no property, has no office or employees, and neither sells nor services automobiles, in Tennessee. The plaintiff alleges in her complaint that she has been damaged as aforesaid by the negligent manufacture of this automobile and the defendant's breach of implied warranty of the vehicle.

■ Whether this Court has jurisdiction of the corporate person of Renault depends on Tennessee law. 28 U.S.C. § 1652. The law on the precise point does not appear to have been declared by the highest court in Tennessee, but strong dicta by the Tennessee Supreme Court is indicative that the decisional law of Tennessee will follow Restatement (2d) Torts (1965), § 402A(1) and (2). This text provides, in part, that the seller of any product in a defective condition unreasonably dangerous to the user or to his property is subject to liability for physical harm caused thereby to the ultimate

user or his property, if the product is expected to, and does, reach the user without substantial change in the condition in which it was originally sold, even though the user has not bought the product from, nor entered into any contractual relation with, the seller. Ford Motor Co. v. Lonan (1966), 217 Tenn. 400, 398 S.W.2d 240, 248–250 [3]; cf. Lee v. Sears, Roebuck & Co., D.C.Tenn. (1966), 262 F.Supp. 232, 234–236, 237 [1].

T.C.A. § 20–235(b) and (d) [1] provides, in pertinent parts:

" * * * Persons who are nonresidents of Tennessee * * * and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

\* \* \* \* \* \*

"(b) Any tortious act or omission within this state; [or]

"(d) Entering into any contract of * * * guaranty covering any * * * property * * * located within this state at the time of contracting * * *."

\* \* \* \* \* \*

" 'Person' as used herein shall include corporations * * * which would be subject to service or [sic: of] process if present in this state. Any such person shall be deemed to have submitted to the jurisdiction of this state who acts in the manner above described through an agent * * *."

This Tennessee statute is substantially identical to the Illinois "long arm" statute, Ill.Rev.Stat.1965, ch. 110, § 17. Temco, Inc. v. General Screw Products, Inc., D.C.Tenn. (1966), 261 F.Supp. 793, 797 [3]. Illinois courts have specifically held that the negligent manufacture of a product constitutes the doing of a "tortious act" within Illinois, where the resulting injury occurred in Illinois, that where a corporation elects to sell its products for ultimate use in another state, it is not unjust to hold it answerable there for any damage caused by defects in those products, and that the fact that the purchase involved was made from an independent middleman or that someone other than the defendant shipped the product into the forum state does not affect such jurisdiction in the forum state. Gray v. American Radiator and Sanitary Standard Corp. (1961), 22 Ill. 2d 432, 176 N.E.2d 761; that whether the injury-producing defect stems from negligence or from breach of implied warranty [2] has no impact on the jurisdictional question, the jurisdictional act being, not the creation of the defect, but the distribution of defective products in a national way, that a manufacturer who voluntarily [3] places his product in the national channels of commerce not only submits himself to jurisdiction in all states where his product causes injury but also to the laws of those states, Keckler v. Brookwood Country Club, D.C. Ill. (1965), 248 F.Supp. 645, 649–650 [7]; and that a supplier, such as Renault, may be held, although not the actual manufacturer of the defective product. Suvada v. White Motor Company, (1965), 32 Ill.2d 612, 210 N.E.2d 182.

■■ Although Renault did not manufacture this automobile, it was manufactured by its *alter ego* Regie. In this

---

1. Substituted service of process under T. C. A. §§ 20–236 and 48–923 et seq. are both in the same manner, and either satisfies Rule 4(e), Federal Rules of Civil Procedure.

2. An action on an implied warranty under Illinois practice follows the theory of strict liability. Keckler v. Brookwood Country Club, infra, 248 F.Supp. 645, at 646.

3. These statutes cover a single tort in the forum state, where it is shown that the defendant took voluntary action calculated to have an effect on the forum state, Rosenblatt v. American Cyanamid Chemical Company (1965), 86 S.Ct. 1, 15 L.Ed. 2d 39, appeal dismissed (1965), 382 U.S. 110, 86 S.Ct. 256, 15 L.Ed.2d 192, such as where a defendant voluntarily adopts a national distribution system of products calculated to have an effect on the forum state.

situation, Renault may be held liable for any wrongdoing of Regie. Neese v. Firemen's Fund Ins. Co., C.A.Tenn. (1964), 53 Tenn.App. 710, 717, 386 S.W.2d 918, certiorari denied (1964), citing Dillard & Coffin Co. v. Richmond Cotton Oil Co. (1918), 140 Tenn. 290, 296 [1], 204 S.W. 758; Nichols & Co. v. Secretary of Agriculture, C.C.A.1st (1942), 131 F.2d 651, 655 [7], quoting from Owl Fumigating Corp. v. California Cyanide Co., C.C.A.3rd (1929), 30 F.2d 812, 813 [1]; Darling Stores Corp. v. Young Realty Co., C.C.A.8th (1941), 121 F.2d 112, 116 [4]. Where the corporate manufacturer and the corporate seller are in truth and fact, at least so far as the claim of the plaintiff is concerned, one and the same organization, the plaintiff may disregard corporate entities and proceed against the corporate seller. Green v. Equitable Powder Mfg. Co., D.C.Ark. (1951), 95 F.Supp. 127, 132 [7].

The plaintiff's motion to strike and overrule Renault's motion to dismiss this complaint and quash the service of process hereby is

Sustained, and the defendant's said motion hereby is

Stricken.